**SUSAN MARTIN (AZ#014226)**
**DANIEL L. BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Andrea Susan Twitchell,<br><br>Plaintiff,<br><br>vs.<br><br>American Airlines Retirement Benefit Program; Plan Administrator of the American Airlines, Inc. Pilot Retirement Benefit Program; American Airlines, Inc.,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT** |

This is an action for disability benefits and to redress violations of ERISA's claims procedure and disclosure requirements and breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 USC § 1001 *et seq*.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e), (f), and 28 USC § 1331.

2. Venue is proper under 29 U.S.C. § 1132(e). The Plan is administered in this District, the breach took place in this District and Defendants reside and may be found in this District.

**PARTIES**

3. Plaintiff Andrea Susan Twitchell ("Plaintiff" or "Ms. Twitchell") is a resident of Tucson, Arizona. At all times relevant, Ms. Twitchell was a "participant" in the American Airlines Retirement Benefit Program within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(37).

4. Defendant American Airlines, Inc. Pilot Retirement Benefit Program (the "Plan") is an "employee benefit plan" providing disability and retirement benefits to eligible current and former pilot employees of American Airlines within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3).

5. Defendant Plan Administrator of the American Airlines Retirement Benefit Program is the "administrator" of the Plan within the meaning of Sections 3(16)(A) of ERISA, 29 U.S.C. §§1002(16)(a), and is a fiduciary with respect to the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. §1002(21)(A).

6. Upon information and belief, American Airlines, Inc. ("American") is the Plan Administrator and Plan Sponsor of the Plan and of all other American Airlines benefit plans and programs within the meaning of Sections 3(16)(A) and 3(16)(B) of ERISA, 29 U.S. C. §1002(16)(A) and 1002(16)(B), and is a fiduciary with respect to the Plan and other plans within the meaning of ERISA Section 3(21)(A), 29 U.S.C. §1002(21)(A), including, *inter alia*, group health benefits and travel benefits programs for Plan participants.

**GENERAL ALLEGATIONS**

7. In or around June 1989, Ms. Twitchell began working as a pilot for American Airlines, Inc.

8. As a pilot, Ms. Twitchell was required to analyze the intended route, conduct a detailed examination of the exterior and interior of the aircraft, operate and test various systems and components and make a determination as to whether the aircraft was acceptable for safe flight operation. She was also required to perform pre-flight checklists and communicate with the FAA, comply with all FAA requirements, monitor aircraft systems

during flight and in the event of any emergency situation, "take immediate required action and determine if immediate landing is necessary."

9. As a pilot, Ms. Twitchell was also required to be able to work varying hours and be on duty "for as long as twelve to fourteen hours...spann[ing] many time zones..."

10. Ms. Twitchell worked for American Airlines from in or around June 1989 until she became disabled and was unable to work due to her disability in or around June 2002.

11. In or around June 2002, Plaintiff became disabled and began to suffer from multiple physical problems, including, *inter alia*, serious and unexpected allergic reactions, abdominal pain, tremors, cognitive problems, memory problems, extreme fatigue and low oxygen levels.

12. Ms. Twitchell's treating providers submitted documentation showing that Ms. Twitchell was unable to work due to illness including: neurocognitive dysfunctions/disorders; mercury and other metal toxicities/sensitivities; multiple chemical and environmental sensitivities/toxicities; multiple inhalant allergies; gluten intolerance; multiple food allergies; cephalgia, and neurological dysfunctions.

13. These multiple physical problems rendered Plaintiff unable to continue to work in her demanding job as a pilot.

14. The Plan provides in relevant part, that a participant is disabled if the participant has "an illness or injury, verified through qualified medical authority (as provided in Section 5.4) which prevents a Member from continuing to act as an Active Pilot Employee in the Service of the Employer..."

15. Section 5.4 of the Plan provides in relevant part, that a participant will receive disability retirement benefits in accordance with the following rules:

> (a) A Member's Disability will be considered to have existed (and to continue to exist) only if he has received and continues to receive qualified medical care consistent with the nature of the illness or injury which gives rise to such Disability;
> (b) A Member's Disability will be considered to cease to exist if (i) his health is restored so as not to prevent him from acting as an Active Pilot Employee in the service of the Company, (ii) verification of such Disability can no longer

be established or (iii) appropriate medical care is wantonly disregarded by such Member.

16. In or around April 2003, the Plan approved Ms. Twitchell for disability retirement benefits because of her "medical inability to act as a Pilot."

17. During the period Ms. Twitchell was receiving benefits, including in or around April 2004, November 2004, December 2005 and June 2006, the Plan asked Ms. Twitchell to provide letters and documentation from her treating physicians regarding her disability and treatment and the Plan regularly re-confirmed that Ms. Twitchell continued to be disabled.

18. Throughout her disability, Ms. Twitchell was under the care of many physicians, many of whom provided continuity of care from the outset of her disability through the date her benefits her terminated.

19. At all relevant times, Ms. Twitchell's physicians provided detailed information concerning Ms. Twitchell's ongoing treatment and repeatedly advised Defendants that Ms. Twitchell continued to be disabled and was unable to work as a pilot.

20. At all relevant times, Ms. Twitchell received appropriate qualified medical care and treatment from her treating physicians consistent with the nature of the illness that gave rise to her disability. .

21. At no time did Ms. Twitchell "wantonly disregard" her treating physicians' recommended treatment and she continued to qualify for benefits within the meaning of Section 5.4(b) of the Plan.

22. Ms. Twitchell's health was not restored and at all relevant times she continued to be unable to perform her duties as an Active Pilot Employee within the meaning of the Plan.

23. For more than four years, the Plan Administrator agreed that Ms. Twitchell was disabled and continued to provide Ms. Twitchell with benefits under the Plan.

24. In or around January 2006, Ms. Twitchell was approved for Social Security disability benefits. The Social Security disability decision stated that Ms. Twitchell became disabled on June 22, 2002 "because of mercury poison, toxic encephalopathy, tremors and

gastrointentinal problems so severe" that Ms. Twitchell was "unable to perform any work existing in significant numbers in the national economy."

25. On or about September 5, 2007, the Plan terminated Ms. Twitchell's disability retirement benefits without any independent medical examination and despite the facts that there was no substantial change in Ms. Twitchell's benefits or her course of treatment, that Ms. Twitchell's treating physicians continued to confirm that she was disabled within the meaning of the Plan and that the evidence supporting Ms. Twitchell's disability did not differ in any material way from the evidence on which the Plan concluded Ms. Twitchell was disabled.

26. As of the year 2007 when Ms. Twitchell's benefits were terminated, the Plan lacked funds to meet a significant amount of its projected benefit obligations.

27. As of the year 2007 when Ms. Twitchell's benefits were terminated, every dollar that American saved by reducing disability payments decreased its projected benefit obligations.

28. By letter dated September 5, 2007, the Plan informed Ms. Twitchell that her benefits were being terminated, *inter alia*, "because it cannot be established that you are receiving qualified medical care that is consistent with your diagnosis of Performance Anxiety."

29. Ms. Twitchell never received any disability benefits under the Plan for "Performance Anxiety."

30. The Plan's September 5, 2007 denial also claimed that despite its approval of Ms. Twitchell's benefits four years earlier based on substantially the same evidence of disability, her condition and testing were not supported by medical evidence. The Plan claimed that laboratory reports submitted by Ms. Twitchell "do not conclusively establish the existence of the medical conditions listed above or verify your ongoing disability."

31. In the September 5, 2007 letter terminating Ms. Twitchell's benefits, and despite no material change in the evidence supporting Ms. Twitchell's benefits which had repeatedly been re-approved by the Plan, the Plan's Medical Director stated that he

"remain[ed] unable to verify that you have received and continue to receive qualified medical care consistent with the nature of a prolonged illness that has given rise to your disability, and your disability is now considered to have ceased to exist."

32. In violation of ERISA and claims regulations thereunder, the Plan failed to advise Ms. Twitchell in the letter terminating her benefits of what information she needed in order to perfect her claim for benefits.

33. The Plan based its determination to deny benefits on a paper review of records and the individual reviewing Ms. Twitchell's claim never personally examined Ms. Twitchell.

34. By letter dated February 25, 2008, Ms. Twitchell appealed the termination of her claim for benefits.

35. With her appeal, Ms. Twitchell enclosed voluminous records from her treating physicians whose opinions had been relied on by the Plan when Ms. Twitchell was approved for disability benefits and each time her benefits were confirmed over the prior four years. In support of her appeal, Ms. Twitchell provided the Plan with laboratory testing reports from accredited laboratories, treating physician notes and letters from Ms. Twitchell's licensed treating physicians and medical reviewers establishing that Ms. Twitchell was disabled from her occupation as a pilot.

36. For example, in a letter from Katherine Henry, M.D., of the Envionmental Health Center- Dallas that Ms. Twitchell submitted in support of her appeal, Dr. Henry stated that Ms. Twitchell was receiving appropriate medical care and still suffered from disabling conditions, including cognitive impairment that rendered her unable to fly as well as central nervous system reactions. Dr. Henry stated that Ms. Twitchell "obviously cannot resume her duties as a commercial airline pilot when her brain is functionally impaired and when detailed and sometimes split second decisions are to be made."

37. By way of further example, in a letter submitted by Ms. Twitchell in support of her appeal, William Rea, M.D., Director of the Environmental Health Center - Dallas, stated that Ms. Twitchell was receiving medically appropriate care for her condition and that

Ms. Twitchell continued "to suffer from chemical sensitivities and any exposure to incitants especially chemicals can result in aggravation of this patient's medical condition." Dr. Rea further stated that "current objective medical data clearly updates her medical condition and she continues to suffer from neurological deficits."

38. In support of Ms. Twitchell's appeal, Dr. Rea referenced hundreds of studies, including multiple studies in peer-reviewed medical journals, and seven federal government sources that recognize the type of disabilities that Ms. Twitchell suffered. Upon information and belief, none of the Plan's reviewing physicians reviewed these studies in making a determination that Ms. Twitchell was not disabled.

39. A neuropsychological assessment performed by Nancy A. Didriksen, Ph.D, a doctor who had examined Ms. Twitchell and submitted documentation to the Plan in 2002 and in 2008, stated in support of Ms. Twitchell's appeal that Ms. Twitchell had a decline in perceptual organization and working memory, abilities that "are essential for her occupation as a pilot." The report further stated that Ms. Twitchell "would have some difficulty in these abilities, compared with her peers." Dr. Didrikson's report concluded that Ms. Twitchell's "low-normal executive functions, attention and concentration abilities, ability to attend to details, and visual sequencing and planning ability, in addition to her myriad physical symptoms which are often unpredictable in kind and severity, argue most against return to work as an airline pilot, now and in the foreseeable future."

40. Ms. Twitchell submitted another report from Howard J. Lang, D. O. who evaluated Ms. Twitchell and her medical records and stated that Ms. Twitchell suffers from periodic "thinking and memory impairment problem (cognitive dysfunction)" and was unable to work as a pilot as a result of mercury toxicity that continued throughout her period of disability. Dr. Lang also concluded that Ms. Twitchell suffered from several other conditions that rendered her unable to work as a pilot including, *inter alia*, fatigue, episodic abdominal pain, allergies and sensitivities and recurrent tremors.

41. In violation of ERISA and regulations thereunder and the terms of the Plan, the Plan failed to issue a determination on Ms. Twitchell's appeal in a timely manner.

42. By letter dated September 9, 2008, in violation of the terms of the Plan and ERISA, the Plan denied Ms. Twitchell's appeal from the termination of her disability benefits despite the fact that Ms. Twitchell's treating physicians confirmed that she continued to be disabled within the meaning of the Plan and was receiving appropriate and qualified medical care consistent with the nature of the illness that gave rise to her disability and despite the fact that even the Plan's medical reviewers agreed that Ms. Twitchell suffered from serious conditions, including, *inter alia*, cognitive dysfunction, fatigue, episodic abdominal pain, allergies and sensitivities and recurrent tremors.

43. The Plan based its determination to uphold the termination of Ms. Twitchell's benefits on a paper review of records where none of the individuals reviewing Ms. Twitchell's appeal ever personally examined Ms. Twitchell.

44. In upholding the termination of Ms. Twitchell's benefits, the Plan failed to consider Ms. Twitchell's significant essential job duties as a pilot to determine whether she was disabled from performing those responsibilities.

45. The Plan's denial of Ms. Twitchell's appeal states several times that the medical reviewers did not understand how to interpret data or "understand" what Ms. Twitchell's medical data meant and also stated that diagnostic tests submitted in support of Ms. Twitchell's appeal "are difficult to evaluation [sic] for any objective findings."

46. There is no "objective evidence" requirement under the terms of the Plan.

47. The Plan's denial also states that Ms. Twitchell's "main symptomatology [sic] seems to be basically neurocognitive in nature, but no specific culprit for this can be determined or revealed from her extensive records."

48. The Plan's reviewers suggested that medical examinations be performed on Ms. Twitchell but none were requested by the Plan Administrator.

49. Despite the medical reviewers' stated lack of understanding of Ms. Twitchell's medical evaluations and tests and claims by the medical reviewers that Ms. Twitchell needed to be evaluated for her gastro-intestinal problems and "evaluated by a neurologist, neuropsychologist, and rheumatologist," the Plan failed to request that Ms. Twitchell

undergo any independent medical evaluations by any of the suggested specialists and again failed to ask Ms. Twitchell for any additional information. Instead, it denied her appeal.

50. The Plan's September 9, 2008 denial states that "at least two of these independent medical consultant physicians made recommendations that the Pilot seek evaluation from physicians practicing in mainstream conventional medicine, and if those physicians' evaluations/testing of the Pilot reveal objective evidence of neurological disorder/dysfunction, psychiatric disorder, chemical sensitivity syndrome, or other confirmed diagnoses, that the Pilot should seriously consider receipt of and compliance with medically appropriate conventional medical treatment rendered by these physicians for such diagnosed conditions."

51. In *Miller v. American Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011), the court, examining the same Plan at issue in this matter, found that the criteria used to terminate the benefits of the plaintiff in that case were procedurally and substantively defective.

52. The *Miller* court found, *inter alia*, that the Plan Administrator acted arbitrarily when it reversed its initial opinion that the plaintiff was disabled and terminated benefits despite the fact that the information it used to terminate benefits did not differ in any material way from the information it had received when it determined that the plaintiff was disabled.

53. The same defective process and decisionmaking was applied to Plaintiff in this case.

54. Notwithstanding the decision in *Miller*, Defendants have employed and continue to employ same unlawful criteria and defective procedures found unlawful in *Miller* to Plaintiff and others.

55. Upon information and belief, Defendants have engaged and are engaging in a pattern and practice of unlawful, arbitrary and discriminatory application and determinations regarding their termination of disability benefits.

56. In accordance with ERISA's claims regulations, by letters dated October 30, 2007 and September 25, 2008, Ms. Twitchell requested all information relevant to her claim

for benefits, including, *inter alia*, all documents relied upon, submitted, considered or generated in the course of making the benefit determination.

57. In violation of ERISA and the regulations thereunder, the Plan Administrator failed to provide any internal notes and documentation concerning Ms. Twitchell's claim, including the entries for Ms. Twitchell's claim with the American's Pilot Disability Case Management Notes System, documents regarding communications with physicians who were initially asked to provide an opinion but who did not ultimately provide an opinion and documents regarding the same, all memoranda and copies of any internal rules, guidelines, protocols, or similar criteria, electronic or otherwise, used in making determinations on Ms. Twitchell's claims for benefits.

58. By letter dated March 14, 2011, Ms. Twitchell again requested documents from the Plan Administrator relevant to Ms. Twitchell's claim for benefits including internal notes and documentation concerning Ms. Twitchell's claim, all entries for Ms. Twitchell's claim with the American's Pilot Disability Case Management Notes System, documents regarding communications with physicians who were initially asked to provide an opinion but who did not ultimately provide an opinion and documents regarding the same, all memoranda and copies of any internal rules, guidelines, protocols, or similar criteria, electronic or otherwise, used in making determinations on Ms. Twitchell's claims for benefits.

59. Having received no response to her request for documents, by letter dated May 5, 2011, Plaintiff again requested documents relevant to her claim for benefits from the Plan Administrator.

60. On May 23, 2011, Plaintiff received some but not all of the documents she requested.

61. The May 23, 2011 letter from the Plan Administrator stated: "I'll advise AAMOHS that you've requested case notes, administrative guidelines, applicable policies and procedure manuals, and all other information on your client's disability claim, and they will respond to you under separate cover."

62. In violation of ERISA and ERISA claims regulations, despite Plaintiff's multiple requests for the documents and the Plan Administrator's promise to provide the same, the Plan Administrator never provided many requested documents relevant to Ms. Twitchell's claim, including, *inter alia*, case notes, administrative guidelines, applicable policies and procedure manuals.

63. Ms. Twitchell exhausted the claims review procedures prior to filing suit.

64. As a result of the termination of her benefits under the Plan, Plaintiff was also denied health benefits and her right to benefits under other benefit plans maintained by American Airlines were affected adversely, including, *inter alia*, her right to benefits under the pension plan maintained by American Airlines and pilot travel benefits.

**CLASS ALLEGATIONS**

65. In addition to Plaintiff's individual claims, this action is commenced pursuant to Federal Rule of Civil Procedure 23 as a class action on behalf of the following Class:

> All Plan participants who at any time within the applicable statute of limitations, received disability retirement benefits and had their benefits terminated and all current Plan participants.

66. Upon information and belief, in violation of the terms of the Plan and ERISA, Defendants systematically have engaged in procedurally and substantively defective claims determinations to deny Class members' claims for benefits, including terminating benefits without receiving information that differed in any material way from the information Defendants received when they determined that the Class member was disabled.

67. Upon information and belief, in violation of the terms of the Plan and ERISA, Defendants systematically have denied benefits and will continue to systematically deny benefits by imposing an "objective evidence" requirement when none is contained in the Plan and terminating benefits based on paper reviews of records where none of the individuals reviewing claims ever examined Class members and where there is no basis under the Plan to disregard the opinions of the medical providers who created the records and personally examined the Class members.

68. Upon information and belief, in violation of the terms of the Plan and ERISA, Defendants have systematically failed and will continue systematically to fail to advise Class members of the specific reasons for claim denials and have systematically failed and systematically will continue to fail to advise Class members during the claims process of the additional material or information necessary to perfect their claims and appeals and an explanation of why such materials are necessary.

69. Upon information and belief, in violation of the terms of the Plan and ERISA, Defendants have systematically failed and systematically will continue to fail to consider the essential job duties and responsibilities of Class members in determining whether Class members are disabled within the meaning of the Plan.

70. Upon information and belief, the failure of Defendants to comply with ERISA and the terms of the Plan is systematic and affects and prejudices the rights of all Class members to enforce their rights under the terms of the Plan and ERISA.

71. The Class is so numerous that joinder of all persons in the class is impracticable. According to the Plan's publicly available Annual Return/Report of Employee Benefit Plan ("Form 5500"), as of December 31, 2009, there were more than 10,000 active Plan participants.

72. Under ERISA and the terms of the Plan, all of the Plan participants are entitled to have their benefits determined in accordance with the terms of the Plan and to be provided with a full and fair review of an adverse benefit determination.

73. There are questions of law and fact common to the members of the Class, including, whether declaratory and injunctive and other equitable relief is appropriate and whether Defendants have routinely and systematically violated ERISA and the terms of the Plan including, *inter alia*, by: terminating benefits without receiving information that differed in any material way from the information Defendants received when they determined that the Class member was disabled; failing to consider the essential job duties and responsibilities of Class members in determining whether Class members are disabled within the meaning of the Plan; imposing an objective evidence requirement when no such requirement is

contained in the Plan, and failing to advise Class members during the claims process of what additional material or information is necessary to perfect their claims and an explanation of why such material or information is necessary.

74. The claims of Ms. Twitchell are typical of the claims of the members of the Class in that as set forth above, Ms. Twitchell was harmed and prejudiced by Defendants' failure to comply with the terms of the Plan, ERISA and regulations thereunder.

75. Ms. Twitchell will fairly and adequately represent the interests of the Class members. She has diligently pursued her claim and has engaged the undersigned experienced ERISA and class action counsel.

76. The prosecution of separate proceedings by the individual members of the Class would create a risk of inconsistent or varying adjudications which would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

77. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants committed the same violations of the Plan and claims procedure requirements as in *Miller* with respect to Ms. Twitchell's claim, including terminating benefits without receiving information that differed in any material way from the information Defendants received when they determined that Plaintiff was disabled; unlawfully denying Plaintiff's claim for benefits based on paper reviews of records where none of the individuals reviewing her claim ever personally examined Plaintiff and where there was no basis under the Plan to disregard the opinions of the medical providers who created the records and have personally examined Plaintiff; unlawfully failing to consider Plaintiff's essential job duties and responsibilities in determining whether Plaintiff was disabled within the meaning of the Plan, and unlawfully failing to advise Plaintiff during the claims process of additional material or information necessary for her to perfect her claim and an explanation of why such material or information was necessary.

78. Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members. A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because the sheer size of the Class would make such proceedings impracticable, the Class is widely dispersed geographically, the relatively small amounts of monetary relief or the absence of monetary relief in some cases presents a significant and recurring obstacle to the ability of Class members to retain counsel to prosecute these ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause irrevocable loss of valuable rights unless remedied through injunctive and other appropriate equitable relief.

## COUNT I

### FOR BREACH OF CONTRACT AND RECOVERY OF BENEFITS AND ENFORCEMENT OF RIGHTS PURSUANT TO SECTION 502(a)(1)(B) OF ERISA

Plaintiff repeats and realleges each allegation set forth in the foregoing paragraphs as though set forth herein.

79. Section 502 (a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:

> A civil action may be brought -
>
> (1) by a participant or beneficiary - . . .
> (2) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

80. As a proximate result of the foregoing acts and omissions, Defendants violated the terms of the Plan, ERISA and applicable regulations in terminating Plaintiff's disability benefits and denying her appeal.

81. As a proximate result of Defendants' violations of ERISA, applicable regulations and the terms of the Plan, Plaintiff has been harmed and deprived of benefits due under the terms of the Plan.

82. Plaintiff is entitled to legal and equitable relief as a result of Defendants' violations of ERISA, applicable regulations and the terms of the Plan, including, but not limited to: payment of her disability benefits from September 2007, when her benefits were terminated through the date Plaintiff ceases to be disabled within the meaning of the Plan, together with appropriate interest; an order directing Defendants to correct their records and restore Plaintiff's entitlement to benefits and eligibility for benefits and compensation under each and every benefit plan or pay practice that Defendant American Airlines administers and sponsors and that were denied or diminished or may in the future be denied or diminished as a result of the denial of Plaintiff's claim for disability benefits under the Plan; and an order directing Defendants to make Plaintiff whole for the delay in paying benefits under the terms of the Plan and ERISA together with all other appropriate relief including attorneys' fees and costs.

**COUNT II**

**TO REDRESS DEFENDANTS' SYSTEMATIC VIOLATION OF THE TERMS OF THE PLAN PURSUANT TO SECTIONS 502(a)(1)(B) and (a)(3) OF ERISA**

Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if set forth herein.

83. By the acts and omissions complained of above, Defendants have systemically, arbitrarily and discriminatorily violated ERISA, applicable regulations and the terms of the Plan.

84. As a proximate result of Defendants' violations of ERISA, applicable regulations and the terms of the Plan, Plaintiff and Class members have been harmed and, *inter alia*, have been deprived of their rights to benefits they are entitled to under the Plan.

85. Section 502(a)(3) provides that:

> A civil action may be brought–
>
> ...
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

> such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

86. Pursuant to ERISA Sections 502(a)(1)(B) and (a)(3), Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief, including, but not limited to: enjoining Defendants from violating ERISA, applicable regulations and the terms of the Plan; directing Defendants to give notice and provide each Class member the option to fully reopen, without prejudice, the claim and appeal of any Class member whose benefits were terminated and who received an adverse benefit determination on appeal and to order that such claim and appeal be conducted again in compliance with the terms of the Plan, ERISA and regulations thereunder and to pay Class members all benefits wrongfully denied, together with pre-judgment interest and attorneys' fees and costs.

**COUNT III**

**TO REDRESS DEFENDANTS' BREACHES OF FIDUCIARY DUTY PURSUANT TO SECTION 502(a)(3) OF ERISA**

Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if set forth fully herein.

87. ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in relevant part:

> (1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> ***
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

88. By the acts and omissions complained of above, Defendants breached their fiduciary duties.

89. As a proximate result of Defendants' breaches of fiduciary duty, including, *inter alia*: the systematic termination of benefits without receiving information that differed in any material way from the information received when Defendants granted disability benefits under the terms of the Plan; the systematic imposition of an "objective evidence" requirement not contained in the Plan; the systematic failure to consider Class members' essential job duties in determining whether Class members are disabled; the systematic denial of Class members' benefits based on paper reviews of records where none of the individuals reviewing claims ever personally examined Class members and where there is no basis under the Plan to disregard the opinions of the medical providers who created the records and have personally examined the Class members and whose opinions were accepted by the Plan; and the systematic failure to advise Class members during the claims process of what additional material or information is necessary for Class members to perfect their claims and an explanation of why such material or information is necessary, Plaintiff and Class members have been harmed and, *inter alia*, have been deprived of rights under the Plan and ERISA.

90. Plaintiff and Class members are entitled to declaratory, injunctive and other appropriate equitable relief including, but not limited to, an order declaring that Defendants breached their fiduciary duties and directing Defendants to make Plaintiff and Class members whole, an order declaring Defendants' procedures and criteria used to determine whether Class members are eligible for benefits are arbitrary and discriminatory and violate the terms of the Plan and ERISA and directing Defendants to discharge their obligations to participants in accordance with the provisions of Section 404 of ERISA, an order enjoining Defendants from continuing to employ the current procedures and criteria for determining claims for benefits and an order requiring Defendants to re-evaluate all Class members' adverse benefit determinations in accordance with the terms of the Plan, ERISA and applicable regulations and to make Plaintiff and Class members whole for all losses resulting from Defendants' breaches of fiduciary duty and to cease and desist from violating ERISA's fiduciary duty requirements, together with reasonable attorneys' fees and costs.

**COUNT IV**

**FOR VIOLATION OF ERISA'S CLAIMS PROCEDURE AND DISCLOSURE REQUIREMENTS**

Plaintiff repeats and realleges each allegation set forth in the foregoing paragraphs as though fully set forth herein.

91. Section 503 of ERISA, 29 U.S.C. § 1133 provides in relevant part:

> In accordance with regulations of the Secretary, every employee benefit plan shall**--**
> **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

92. ERISA Section 503, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators must respond to claims and appeals in a timely manner, must provide claimants upon request and free of charge all documents relevant to their claim for benefits and must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial and a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

93. Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, . . .each violation described in subparagraph (b) with respect to a single participant or beneficiary, shall be treated as a separate violation.

94. As a proximate result of the acts and omissions set forth above, Defendants violated ERISA's claims procedure and disclosure requirements and applicable regulations

and failed to provide Plaintiff with a full and fair review. As a result of Defendants' acts and omissions, Plaintiff has been harmed and her right to benefits under the Plan, and to pursue claims for benefits under the Plan, were unduly inhibited and hampered, prejudiced and delayed.

95. Pursuant to ERISA Section 502(a)(3), Plaintiff is entitled to civil monetary penalties of $110 for each day for each separate violation for failing to provide Plaintiff with requested documents and injunctive and other equitable relief to redress Defendants' claims procedure and disclosure violations, including, *inter alia*, enjoining Defendants from violating the claims regulations, and barring Defendants from henceforth violating ERISA claims procedures and disclosure requirements, together with interest, attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally:

A. Declaring that Defendants violated ERISA, applicable regulations and the terms of the Plan and that Plaintiff is entitled to benefits retroactive to September 5, 2007 until her disability ceases to exist within the meaning of the Plan, together with prejudgment interest and other appropriate make whole relief;

B. Declaring that Defendants violated ERISA Section 503 and regulations thereunder;

C. Enjoining Defendants from violating the terms of the Plan and ERISA's claims procedure requirements and directing Defendants to notify all Class members whose benefits were terminated of their right to re-open their claims and appeals, without prejudice, and ordering Defendants to redetermine Class members' claims for benefits in compliance with the terms of the Plan, ERISA and applicable regulations after providing Class members with notice of their rights under ERISA's claims procedure requirements;

D. Awarding Plaintiff and Class members prejudgment interest;

E. Awarding Plaintiff $110 per day for each separate violation for Defendants' failure to provide relevant Plan documents;

E. Awarding Plaintiff and Class members their reasonable attorneys' fees and costs pursuant to Section 502(g) of ERISA, 29 USC §1132(g) and/or the common fund theory;

F. Awarding Plaintiff and Class members such other and further relief as the Court deems just and proper.

Dated this 16th day of August, 2011.

**MARTIN & BONNETT, P.L.L.C.**

By: s/Susan Martin
Susan Martin
Daniel L. Bonnett
Jennifer L. Kroll
1850 North Central Avenue, Suite 2010
Phoenix, AZ 85004
(602) 240-6900

Attorneys for Plaintiff